13799

PREVOST *ET AL.* v. POST *ET AL.*

(173 S. E., 628)

Before RAMAGE, J., Greenville, July, 1933.

*Mr. W. G. Sirrine,* for defendants-appellants,

*Messrs. Ward & Ward,* for plaintiffs-respondents,

March 8, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In their suit against the nonresident defendants, the plaintiffs caused to be issued, by the Clerk of Court of Greenville County, warrants of attachment, and, thereunder, deposit accounts of the defendants, in five banking institutions of the State, were levied on.

The motions of the defendants to set aside the service of the summons and complaint and to vacate the attachments were refused by his Honor, Circuit Judge Ramage, presiding in the Court of Common Pleas of Greenville County, in an order dated September 29, 1933; but, in that order, the attachment bond of $250.00, accepted by the Clerk of Court, was directed to be increased to the sum of $2,000.00. Pursuant to that order, a new bond, in the increased amount, on the part of the plaintiffs, was filed with, and accepted by, the Clerk of Court.

The defendants having appealed from the order of September 29th, a motion to "settle the case" was heard by Judge Ramage on November 28th. In his order of that date, he stated that the first suggestion as to an increase in the amount of the bond was made by him, and later the attorneys for the respective parties made suggestions as to the amount to be fixed in the new bond. The presiding Judge

corrected thereby, in that manner, an indication in his first order that a motion to increase the bond was made by the defendants.

On November 29th, "exceptions to the second bond," taken by the defendants, were overruled.

From the orders of the Circuit Judge, there are two appeals to this Court.

We consider first the appeal of the defendants, who, alone, in the title appearing on the transcript of record, are described as "Appellants."

When the levies on the bank deposits were made, in each instance on August 21, 1933, the respective sheriffs, or their deputies, in the three counties, in which the attachments were levied, served certified copies of the warrant of attachment on officials of the several banks. But, on the day of such service, no "notice showing the property levied on" was left with an official of either of the banks. Such notices, on the part of the respective officers serving the attachment papers, and making the levies, were given, however, to an official of the respective banks on the following day in some instances, and on the second day following the levies in other instances. For the failure to serve *together* the "notice showing the property levied on," and the copy of the warrant of attachment, the defendants say the attachment should have been set aside; and this is the ground of their first exception. Their position is that the language of Section 538 of the Code, as to the execution of an attachment "on property incapable of manual delivery," should be strictly construed, and such construction requires a holding that the attachment warrant and the notice of levy must be served *together*. Our view is that the stricter is our construction of the language, the plainer it appears that the position taken by the defendants is erroneous. Only by a very liberal construction, one which we could not think of taking, could we agree with the view contended. We should have to insert in the statute the word "together," which

nowhere appears there. The section says that the execution of the attachment, upon the class of property described, "shall be made by leaving a certified copy of the warrant of attachment," with certain specified officers or agents, "with a notice showing the property levied on." It is not said the warrant and notice must be served *together*. We cannot think it was the intention to require that the "notice" should be served at the instant of the delivery of the copy of the warrant. Necessarily, oftentimes, the service of the "notice showing the property levied on" would come later than the delivery of the copy of the warrant. The warrant is the authority of the officer for making the levy. Only after he has made it can he give notice that it has been made. He certainly could not give the notice that the levy has been made prior to its making, or while he was in the act of making the levy. Sometimes, he could not in that notice "show the property levied on," until he has had time to make an inventory; for illustration, in the instances where a large stock of merchandise, or crops on a plantation, have been the subject of the levy. When an inventory is necessary, it may take the officer some little time to prepare the required notice. Then, too, with or without an inventory, an officer, not well acquainted with legal forms, may find it necessary to procure the assistance of counsel in the case, or some other competent person, to aid him in the preparation of the notice. In our opinion, clearly the law looks to the giving of the notice only after the levy has been made, and such notice is entirely sufficient if given within a reasonable time thereafter. The matter of "reasonable time" is not really involved here, but we may say that the giving of the notice within two days after the making of the levy, in this case, was entirely sufficient.

The second and third exceptions of the defendants may be considered together. The second presents the position that the attachment should have been set aside, because the bond, accepted by the clerk, in the sum of

$250.00, was entirely insufficient, since the property attached amounted in value to something like $8,000.00; and the third challenges the right of the presiding Judge to increase the amount of the bond.

The defendants concede that the case of *Copeland Company v. Brown*, 103 S. C., 177, 87 S. E., 1002, holds contrary to their positions, and we have granted their request for a review of that decision.

It was held in the *Copeland case*, where an attachment was issued by a magistrate, who had required a bond only in the minimum amount fixed by the statute, that the motion to dissolve, on the insufficiency of the bond, should not have been granted, but the remedy of the defendant in attachment was to move for an increase in the amount of the undertaking.

Under the old attachment law, the bond required of the plaintiff was to be "in double the amount sued for." *Brown & Stone v. Whiteford*, 4 Rich. (38 S. C. Law), 327, decided in 1851. The present statute, as to security on obtaining a warrant of attachment (Section 530 of the Code), enacted in 1870, is entirely different from the former law, and the amount of the undertaking is left to the discretion of the officer issuing the warrant, with limitation to the effect that in the Court of Common Pleas the amount shall be at least $250.00, and when the warrant is issued by a magistrate, the minimum amount shall be $25.00.

The holding in the *Copeland case* was based on the present statute, and we see no good reason for overruling it. We think, too, the General Assembly was wise in making the change in the law. Under the old law, in a suit for, say, $10,000.00, the plaintiff had to give a bond for $20,000.00, when it might turn out that the property attached was worth a much smaller sum, even as low as $100.00. Under the last enactment, the officer issuing the attachment may, and should, inquire as to the kind and value of the property likely to be attached, and what damages the defendant may

suffer by reason of the attachment, if it be determined later that it should not have been issued. No maximum amount, and not even any fixed amount, of the bond is provided for in the statute, except as to the minimum amounts. The language employed is a clear indication of the legislative intention that the officer is to exercise a sound discretion in naming the amount. Even after making investigation, it may be difficult for the officer to name in advance a fair amount to be fixed in the undertaking, for his information has come only from the plaintiff, and, usually, an attachment is a hasty proceeding. If it develops later that the amount fixed is too small, fairness to the defendant would require that it be increased. The matter of increase, if one seems necessary, properly rests with the Circuit Judge, who has supervision of the acts of the Clerk of Court.

We think it well to call attention to the fact that, in our disposition of the second and third exceptions, we have not passed upon the sufficiency of the undertaking, as increased in its amount, for the exceptions have not made any point as to that. On the contrary, the defendants claim that the Judge did not have "a right to increase the amount of the bond."

The fourth exception of the defendants charges error in the refusal to vacate the attachment, for the reason that one of the sureties on the undertaking of the plaintiff had no property in Greenville County, and the other surety resided in Anderson County. It is said, in connection with this exception, that in attachment proceedings "the bond to be sufficient must be signed" by persons residing within, and having property in, the county where the attachment is issued. The statute (Section 530, *supra*), as to the security required, does not sustain the position taken. The law is that the officer must require "sufficient surety." We think where personal sureties are accepted, the officer should require that they be residents of the State, so that the Court may have jurisdiction of them. We have not

found any provision in the law to the effect that a personal surety must be a resident of the county in which the attachment is issued, or that he must own property therein. Under Sections 901 and 7989 of the Code, a surety company, properly licensed to do business in the State, may become surety on an attachment bond. Under Sections 347, 348, and 349, the plaintiff in attachment may deposit cash, in lieu of a personal surety, or the undertaking of a surety company. The enactments of these statutes are indications, if any are needed, to show that the Legislature has not intended the requirement that the surety on the undertaking in attachment must be a resident of, or the owner of property in, the county where the attachment is granted. But, really, we need look only to the statute, itself, which cannot possibly bear the construction insisted upon by the defendants.

The appeal of the plaintiffs is from the order of November 28th, "settling the case" and revising the order of September 29th.

Since the effect of our conclusions is to sustain in its entirety the order of September 29th, which, in reality, was not affected by the revised order, the appeal from that part of the November 28th order, revising the former order, has become academic, and there is no necessity to consider it.

In the appeal from the order settling the case, the plaintiffs have an appendix of a little more than eight pages. Nothing appearing in that appendix was necessary to be in the transcript of record for us to determine the real issues in the appeal. We note particularly that there is included, in full, two affidavits of the attorney for the defendants and three affidavits of one of the attorneys for the plaintiffs. These mainly show that the attorneys for the respective parties have not at all times agreed as to the occurrences in the hearings before the Circuit Judge. They throw no light upon the legal issues for our decision.

The proposal of the plaintiffs, in the amendments they offered to the "case and exceptions," that only excerpts and

necessary statements in the various notices and affidavits and other papers, appearing in the transcript of record, instead of reproducing all these papers in their entirety, may have been well accepted by the attorney for the defendants. The result of our decision, however, is to cast the expense of printing the transcript of record on the defendants, and the appeal of the plaintiffs in that regard, therefore, becomes academic.

We may say that while the transcript of record, together with the appendix, in this case is much shorter than the usual transcript of record presented to this Court, still all the transcript of record, containing twenty-one pages, is at least four times as long as it was necessary for it to have been. It contains, in their entirety, the warrant of attachment, a bond given by the defendants to one of the Spartanburg banks to secure the release of the attached funds, a long affidavit, submitted in behalf of the defendants, and all the notices, in full, served by them. We venture to say that the whole transcript of record could have been confined to four or five pages if counsel for the parties had properly co-operated. Unnecessary matter in a transcript entails an additional burden upon the members of this Court. More important than that, however, is the expense to litigants occasioned by the printing of a voluminous record when it is not necessary. It is not out of place for the Court to say that it is our purpose, whenever we are properly called upon to do so, to co-operate with those attorneys who make an effort to have transcripts of record contain only necessary matter, under our rules and the statutes governing appeals to this Court.

That there may be no question as to the taxation of costs for the printing in the case, it is proper to say that we hold that the defendants must pay for the transcript of record, and the plaintiffs must pay for the appendix.

It is the judgment of this Court: First, that in the appeal of the defendants, the order, appealed from, be, and the same is hereby, affirmed. Second, that the appeal of the plaintiffs be dismissed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.